**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DOMETIC CORPORATION, a Delaware Corporation, | ) ) ) CASE NO. |
| | ) |
| | ) **COMPLAINT** |
| Plaintiff, | ) |
| | ) |
| v. | ) **Jury Trial Demanded** |
| | ) |
| TEKMART INTERNATIONAL INC., a Canadian Corporation. | ) ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Now comes Plaintiff Dometic Corporation ("Dometic"), by and through its undersigned counsel, and hereby files this Complaint against Defendant Tekmart International Inc. ("Tekmart International"), stating as follows:

## INTRODUCTION

1.      This case seeks to ensure that Dometic is paid the amounts owed to it under a judgment entered by this Court (the "Judgment") against Tekmart International's close corporate affiliate, Tekmart Integrated Manufacturing Services Ltd. ("Tekmart HK").

2.      To avoid paying the over $1 million awarded to Dometic under the Judgment, Tekmart International and Tekmart HK engaged in a classic shell game. Mere weeks after the Judgment was entered, Tekmart HK fraudulently transferred all of its assets to Tekmart International under the guise of repaying a promissory note (the "Note"). Tekmart International then used a dormant corporate affiliate to act as a continuation of Tekmart HK, maintaining the

same uninterrupted operations with the same president, the same employees, and the same customers.

3.    While Tekmart International used the Note as a cover for the transfer, the facts demonstrate that this is nothing more than a ruse.

4.    First, based both on Tekmart HK's balance sheet and on the valuation that was given as part of the transfer, the value of the assets transferred to Tekmart International substantially exceeded the amounts that Tekmart HK owed under the Note.

5.    Second, the vast majority of the assets transferred to Tekmart International were not secured under the Note. Nor did Tekmart International register the Note in any potentially applicable jurisdiction. As such, Dometic—who properly recorded a judgment lien in the jurisdictions where Tekmart HK had assets—had legal priority over Tekmart International with respect to the majority if not all of the transferred assets.

6.    Third, the transfer was not entered into at arm's length as the same individual who signed on behalf of Tekmart International as "director" is also the sole director of Tekmart HK.

7.    Fourth, despite the fact that Tekmart HK was in default under the Note as of September 2015, Tekmart International did not proceed to enforce its feigned security rights under the Note for more than a decade and only chose to do so immediately after the Judgment was entered.

8.    Fifth, rather than maintain possession of the assets that were transferred to it, Tekmart International reincarnated Tekmart HK as a new corporate entity and then gave this entity access to all the accounts receivables as well as all the facilities and equipment that previously belonged to Tekmart HK without exchanging any consideration and without any formal documentation.

2

9. Sixth, there was no formal market valuation performed on Tekmart HK's assets at the time of the transfer; rather, the valuation was fabricated so that it conveniently appeared as if Tekmart HK's total assets equaled the exact amount that Tekmart HK purportedly owed Tekmart International.

10. Seventh, the amount Tekmart HK owed to Tekmart International under the Note was fraudulently increased after the Judgment was entered to add over $1.5 million to the principal balance so as to justify the transfer of all of Tekmart HK's assets.

11. To date, Dometic has been unable to collect on the vast majority of the amounts owed to it under the Judgment. As such, pursuant to the Ohio Uniform Fraudulent Transfer Act, Dometic seeks (a) to avoid the transfer made to Tekmart International to the extent necessary to satisfy Dometic's claim against Tekmart HK under the Judgment, (b) an attachment or garnishment against Tekmart International's property and assets, and (c) any other relief that the circumstances may require.

12. Moreover, the Judgment was preceded by an agreement between Tekmart HK and Dometic wherein Tekmart HK agreed to pay Dometic over $1 million in settlement of the claims brought in the underlying action (the "October 2024 Agreement"). Tekmart International knowingly, intentionally, and unjustifiably interfered with Tekmart HK's ability to fulfill its obligations under the October 2024 Agreement by taking all of the assets Tekmart HK could have used to make the outstanding payment. In the alternative, Tekmart Intentional is liable for Tekmart HK's breach of the October 2024 Agreement as a successor of Tekmart HK because Tekmart International and Tekmart HK fraudulently entered into the transfer for purposes of escaping the liabilities owed under that Agreement. As a result of Tekmart International's conduct, Dometic has been damaged in the amount of the monies due and owing under the October 2024 Agreement.

3

## PARTIES

13.     Plaintiff Dometic Corporation is a Delaware corporation, with its principal place of business located in Chicago, Illinois. Dometic manufactures and sells various products for the mobile living market, including products for the recreational vehicle, marine, and camping industries.

14.     Defendant Tekmart International Inc. is a Canadian corporation, with its principal place of business located at 666 Vaughan Road, Ontario, M6E-2Y5, Canada. Tekmart International advertises itself as a multi-disciplinary company providing production solutions and asset recovery options to the world's leading electronic manufacturing services and original equipment manufacturers.

15.     Tekmart International maintains offices in the United States, including at 1455 Vanderbilt Dr., El Paso, Texas 79935.

## JURISDICTION

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a) because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Tekmart International because Tekmart International engaged in fraudulent conduct designed to thwart collection of a judgment in an amount exceeding $1,000,000 entered by the United States District Court for the Northern District of Ohio in connection with a litigation pending in the Northern District of Ohio. Tekmart International also tortiously interfered with a contractual agreement entered into in Ohio, thereby causing injury to Dometic in Ohio. And Tekmart International is liable for the breach of a contract entered into in Ohio, which likewise caused injury to Dometic in Ohio. As such, (a) Tekmart International has purposefully availed itself of the privilege of causing a consequence in Ohio, (b)

4

Dometic's claims in this action arise from Tekmart International's activities directed towards both a judgment and a contract entered in Ohio, (c) and the consequences of Tekmart International's conduct have a substantial connection to Ohio.

18.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) and (3) because a substantial part of the events giving rise to the claim occurred in this district and because Tekmart International is subject to personal jurisdiction in this district at the time action is commenced.

## GENERAL ALLEGATIONS

**The October 2024 Agreement and Subsequent Judgment**

19.     On November 22, 2022, NSK Industries, Inc. brought suit against Tekmart Integrated Manufacturing Services Ltd. ("Tekmart HK") in this judicial district for, *inter alia*, breach of contract. *See NSK Industries, Inc. v. Tekmart Integrated Manufacturing Services Ltd*., Case No. 5:22-cv-02335 (N.D. Ohio) (the "Underlying Action"). On August 9, 2023, Tekmart HK filed a third-party complaint against Dometic in the Underlying Action, asserting claims for, *inter alia*, breach of contract. On October 30, 2023, Dometic filed an Answer, Affirmative Defenses, and Third-Party Counterclaim against Tekmart HK in the Underlying Action, asserting a claim for breach of contract.

20.     On October 14, 2024, after substantial discovery was completed in the Underlying Action, Tekmart HK made a Rule 68 Offer of Judgment to Dometic in the amount of (a) One Million, Two Hundred Fifteen Thousand, Six Hundred Thirty-Four Dollars and 90/100s ($1,214,634.90), and (b) Dometic's reasonable and necessary attorneys' fees and costs incurred in connection with the Underlying Action through October 14, 2024. On that same date, Dometic formally accepted Tekmart HK's Offer of Judgment in writing. Dometic's acceptance of the Offer of Judgment gave rise to an enforceable contract between Dometic and Tekmart HK (the "October 2024 Agreement").

LEGAL\78745193\1

21.     On October 16, 2024, this Court entered judgment against Tekmart HK and in favor of Dometic in the amount of (a) One Million, Two Hundred Fifteen Thousand, Six Hundred Thirty-Four Dollars and 90/100s ($1,214,634.90), and (b) Dometic's reasonable and necessary attorneys' fees and costs incurred in connection with the Underlying Action through October 14, 2024. *See* Ex. A (the "Judgment").

22.     On October 30, 2024, Dometic took a Rule 30(b)(6) corporate deposition of Tekmart HK for the purpose of obtaining post-judgment discovery, including information about the nature and location of the assets belonging to Tekmart HK.

23.     Based on the information obtained at the October 30, 2024 post-judgment deposition, Dometic properly recorded a judgment lien in the jurisdictions where Tekmart HK had assets and then repeatedly attempted to collect on the Judgment. Dometic also repeatedly requested that Tekmart HK make the payment owed under the October 2024 Agreement. However, Dometic has largely been unsuccessful in collecting the monies owed to it. Indeed, all of the Judgment remains outstanding with the exception of $11,763.14 that was maintained in a Tekmart HK bank account, which Dometic successfully attached before the account could be liquidated and closed.

24.     On July 2, 2025, following numerous failed collection efforts, Dometic served Tekmart HK with Requests for Production, seeking documentation about the nature and location of its current assets. Tekmart HK never responded to these Requests for Production or made any effort to satisfy the Agreement and Judgment to which it voluntarily agreed. Accordingly, on September 10, 2025, Dometic filed a Motion for Civil Contempt and Sanctions against both Tekmart HK as well as its former President, Bipin Napal.

25.     On November 5, 2025, this Court entered an order holding Tekmart HK in civil contempt and further ordering sanctions against Tekmart HK in the amount of $500 per week until

it complies in full with the Judgment. The Court held the Motion for Civil Contempt and for Sanctions in abeyance as to Mr. Napal pending Mr. Napal's deposition and further discovery by Dometic.

26. Dometic deposed Mr. Napal on December 4, 2025. In connection with this deposition, Mr. Napal also produced a number of documents to Dometic pertaining to Tekmart HK's assets.

27. Based on the post-judgment deposition of Mr. Napal along with the documents produced in connection therewith, Dometic discovered the fraudulent and unjustified conduct that forms the basis for this action.

**The Close Corporate Relationship Between Tekmart HK and Tekmart International**

28. Tekmart HK is directly affiliated with and is part of the same corporate organization as Tekmart International, the defendant named in this suit. This corporate relationship is evidenced by numerous facts, including those detailed below.

29. First, the sole director of Tekmart HK, Nigel Thomas, is also an officer and director of Tekmart International. Mr. Thomas is also the director of one of three shareholders of Tekmart HK, and the other two shareholders are also affiliated with the Tekmart organization.

30. Second, Tekmart International previously provided its own consolidated financial statement to Dometic to assure Dometic that Tekmart HK had sufficient financial stability to meet Dometic's ongoing business needs. This consolidated financial statement, identified as "Tekmart International Inc. Unaudited Balance Sheet as of September 30, 2020," pertained specifically to Tekmart International's assets and liabilities, was sent to the shareholders of Tekmart International, and was represented to reflect "fairly, in all material respects, the financial position of Tekmart International, Inc." While the consolidated financial statement pertained to Tekmart International,

Tekmart HK was the entity doing business with Dometic and it was the business relationship with Tekmart HK that prompted Dometic's request for assurances of financial stability.

31.     Third, in connection with the provision of this financial statement, Nigil Thomas, an officer and director of Tekmart International at all material times, made numerous representations to Dometic that commingled Tekmart HK and Tekmart International as a single business. For instance, in an email to Dometic signed by Mr. Thomas on behalf of Tekmart International, Mr. Thomas referred to the consolidated financial statement provided to Dometic as the financial statement "of our manufacturing operation." Mr. Thomas also stated in this email that "We recently purchased two additional injecting molding facilities in Mexico which are not reflected in the statement." Mr. Napal, the former president of Tekmart HK, testified that it was Tekmart HK who owned these injecting molding facilities in Mexico. Intercompany documents also reflect that Tekmart HK owned these injecting molding facilities, which was financed through an intercompany loan provided to Tekmart HK by Tekmart International.

32.     Fourth, financial statements produced by Tekmart HK in connection with the deposition of Bipin Napal refer to a loan between Tekmart HK and Tekmart International as a "Note Payable - *Intercompany*." This note, which was executed on August 15, 2013, is not identified on Tekmart International's September 30, 2020 consolidated financial statement.

33.     Fifth, Mr. Napal has used Tekmart International letterhead to communicate with Tekmart HK's customers. For instance, in a document titled "Tekmart Company Announcement," Mr. Napal signed as "President" an announcement to Tekmart HK's customers that was made on Tekmart International letterhead and that identifies Tekmart International's primary Ontario business address.

LEGAL\78745193\1

34.     Sixth, in a Corporate Disclosure Statement that Tekmart International filed in another case brought against it in the Northern District of Ohio, Tekmart International stated that the Corporate Disclosure Statement was filed on behalf of "Tekmart International, Inc. d/b/a Tekmart Integrated Manufacturing Services"—the same name as Tekmart HK.

**The Fraudulent Transfer of Tekmart HK's Assets**

35.     Unbeknownst to Dometic, neither Tekmart HK nor Tekmart International ever intended for Tekmart HK to satisfy either the October 2024 Agreement or the Judgment to which Tekmart HK had agreed. In particular, at the time of the October 2024 Agreement and subsequent Judgment, Tekmart HK and Tekmart International were preparing for Tekmart HK to fraudulently transfer all of its assets to Tekmart International so that Tekmart HK could evade the liabilities it agreed to in both the October 2024 Agreement and the Judgment.

36.     To effectuate this unlawful transfer, on November 12, 2024—less than one month after the October 2024 Agreement was executed and the Judgment was entered—Tekmart HK and Tekmart International entered into a document titled "Secured Creditor's Asset Purchase Agreement" (the "Transfer Agreement"). Nigel Thomas, who is the sole director of Tekmart HK, signed the Transfer Agreement on behalf of Tekmart International as "Director." Mr. Napal signed the Transfer Agreement on behalf of Tekmart HK as "President," although he testified that Mr. Thomas was the individual with whom he interfaced on behalf of Tekmart HK during the Transfer.

37.     Pursuant to the Transfer Agreement, Tekmart HK fraudulently transferred all of its assets to Tekmart International (the "Transfer"). The total value of the assets that were transferred to Tekmart International was at least $13.7 million according to Tekmart HK's most recent balance sheet or as much as $14.64 million according to the terms of the Transfer Agreement. Tekmart

9

International did not assume any of the debt owed to Dometic under either the October 2024 Agreement or the Judgment.

38. At the time of the Transfer, no formal market valuation was performed in connection with Tekmart HK's (a) fixed assets, (b) goodwill, or (c) other tangible and intangible property. Rather, Tekmart International and Tekmart HK simply fabricated a valuation that conveniently made it appear as if all of Tekmart HK's assets collectively had the same exact value as the amount that Tekmart HK purportedly owed to Tekmart International under the Note according to the Transfer Agreement (although, as stated below, the amount that Tekmart HK actually owed under the Note was substantially less than what is stated in the Transfer Agreement).

39. In agreeing to the October 2024 Agreement and subsequent Judgment, Tekmart HK never disclosed to Dometic that it anticipated transferring any of its assets to another entity. Additionally, after the Transfer Agreement was executed, Tekmart HK never disclosed to Dometic that the Transfer had occurred. It was not until Dometic deposed Mr. Napal in his personal capacity on December 4, 2025 that Dometic first learned of the Transfer.

40. Following the Transfer, Tekmart International provided funds to a then-dormant corporate affiliate known as Tekmart International, Ltd. ("Tekmart Ltd.") so that Tekmart HK could be seamlessly reincarnated under a different corporate name. Mr. Napal, who served as the President of Tekmart HK until the Transfer, became the president of Tekmart Ltd. The employees of Tekmart HK became the employees of Tekmart Ltd. The facilities and equipment that Tekmart HK used are now used by Tekmart Ltd. The products that Tekmart HK made and sold are now made and sold by Tekmart Ltd. The customers that Tekmart HK did business with are now the customers of Tekmart Ltd. And, without exchanging any consideration or entering into any formal documentation, Tekmart International has allowed Tekmart Ltd. to receive payment on the same

LEGAL\78745193\1

accounts receivable that Tekmart International acquired from Tekmart HK under the Transfer. Tekmart International has also allowed Tekmart Ltd. to use the facilities and equipment that Tekmart HK transferred to Tekmart International without exchanging any consideration and without entering into any lease agreements, loan agreements, or any other type of documentation. At the time of the Transfer, Tekmart Ltd. was a dormant entity that was not engaged in any business operations. Thus, Tekmart Ltd. is nothing more than the mere continuation of Tekmart HK, generated by the fraudulent and unjustified conduct of Tekmart International for the purpose of evading the October 2024 Agreement and Judgment.

41.     The Transfer was announced to Tekmart HK's customers through a "Tekmart Company Announcement" (the "Announcement"), which stated that Tekmart International had "completed the acquisition of all the assets including accounts receivable of Tekmart [HK]" and that the "acquisition will allow us to expand our product portfolio and enter new markets in USA and Mexico." The Announcement further stated that "The plastics injection molding factories will operate under the name of Tekmart International Limited, incorporated in Delaware (USA), and the Mexico factories will continue without any changes in personnel."

42.     In an attempt to obfuscate the true nature and purpose of the Transfer, the Transfer Agreement states that the Transfer was effectuated because Tekmart HK had defaulted on a loan purportedly evidenced by a promissory note that Tekmart HK had provided to Tekmart International (the "Note") and that the Transfer was "in lieu of foreclosing upon [Tekmart International's] collateral secured by the Security Agreement" (the "Security Agreement"). This is patently false and nothing more than subterfuge for the fraudulent transaction.

LEGAL\78745193\1

43.     First, as explained below, the value of the assets that were transferred to Tekmart International as part of the Transfer substantially exceeded the amount that Tekmart HK owed to Tekmart International under the terms of the Note:

(a) The Note specifically referenced in and attached to the Transfer Agreement is in the amount of $5,2000,000. Tekmart HK's balance sheet shows that it owed this same amount under the Note through March 31, 2023. However, the balance sheet reflects that Tekmart HK paid down the principal balance of the Note to $5,002,279 as of March 31, 2024. Tekmart HK's corporate witness likewise confirmed that, as of October 30, 2024, the principal balance on the Note was $5.002 million.

(b) The balance sheet further reflects that, as of March 31, 2024, Tekmart HK owed another $7,504,939.88 in interest under the Note, with a total balance of $12,507,218.88 due under the Note. However, Tekmart HK's corporate witness testified that, as of October 30, 2024, Tekmart HK owed less than that amount under the Note—specifically, $7,411,000 in interest and a total of $12,413,000. Either Tekmart HK paid down some of the interest on the Note or the interest amount was readjusted sometime between March 31, 2024 and October 30, 2024.

(c) Accordingly, based on Tekmart HK's own sworn testimony, Tekmart HK owed Tekmart International a total of $12,413,00 under the Note as of October 30, 2024— a mere two weeks before the Transfer.

(d) There were no modifications to the Note since it was originally executed in 2013. There are no additional promissory notes that Tekmart HK and Tekmart International entered into since that time. And there are no other promissory notes referenced in the Transfer Agreement as a basis for the Transfer. As such, Tekmart

LEGAL\78745193\1

International never increased the principal balance of the debt owed under the Note. Nor is there any other promissory note that could have served as the basis for the Transfer. Thus, at the time of the Transfer, the total debt owed under the Note and that served as the basis for the Transfer was less than $12.5 million.

(e) Despite owing less than $12.5 million under the Note inclusive of interest, Tekmart HK transferred at least $13.7 million if not more than $14.6 million in assets to Tekmart International under the Transfer Agreement. Thus, the value of the assets that Tekmart HK transferred to Tekmart International exceeded the total amount owed under the Note by more than $1.2 million, if not by as much as $2.1 million.

(f) Had Tekmart HK properly transferred only those assets needed to pay off the debt owed under the Note, Tekmart HK would have had the funds available to pay most if not all of the Judgment.

44.    Second, as explained below, the "secured collateral" identified in the Security Agreement that purportedly underlies the Note did not include the vast majority—if not all—of the assets that were the subject of the Transfer.

(a) The Note itself states that it is a "Promissory Note on Fixed Assets." In other words, the Note is limited to fixed assets. Accordingly, any security rights pertaining to the Note are limited to fixed assets and do not extend to any other type of asset. Tekmart HK's corporate witness expressly confirmed this, attesting that the Note was only secured by Tekmart HK's fixed assets and that Tekmart International's secured interest did not extend to any of Tekmart HK's other assets.

(b) Nonetheless, Tekmart International acquired all of Tekmart HK's assets, which far exceeded the value of Tekmart HK's fixed assets. Indeed, according to the Transfer

Agreement, the fixed assets were only worth $1.79 million of the over $14.6 million in assets that were transferred to Tekmart International. Tekmart HK's balance sheet similarly reflects that Tekmart HK's fixed assets were only worth $1.79 million at the time of the Transfer.

(c) In addition, there is no record of Tekmart International ever having registered or recorded the Note, whether in Canada, Hong Kong, or the United States. Absent such a recording, Tekmart International did not have security rights in any of the assets that were transferred to it, including even as to the fixed assets.

(d) Accordingly, as Tekmart International knew or should have known, it wrongfully took assets that Dometic, as a secured judgment creditor, had legal priority over.

45.     Third, as explained below, the Transfer Agreement was not entered into at arms-length.

(a) Nigel Thomas, who is both an officer and director of Tekmart International, signed the Transfer Agreement on behalf of Tekmart International as "Director."

(b) Mr. Thomas is also the *sole* director of Tekmart HK.

(c) Mr. Thomas is also the same individual with whom Mr. Napal interfaced on behalf of Tekmart HK during the Transfer.

(d) Mr. Thomas is also a director of one of only three shareholders of Tekmart HK (and the other two shareholders are also associated with the Tekmart organization).

(e) Mr. Thomas was therefore on both sides of the Transfer Agreement, both formally and practically.

LEGAL\78745193\1

46. Fourth, as explained below, Tekmart International allowed Tekmart HK to be in default under the Note for more than a decade and only proceeded to enforce its feigned security rights under the Note mere weeks after the Judgment was entered.

(a) The Note obligates Tekmart HK to make monthly payments on the amounts owed over the course of 24 months, with the first payment due on September 1, 2013. Thus, based on the terms of the Note, Tekmart HK should have made 24 payments beginning on September 1, 2013 and it should have paid the Note in its entirety by September 1, 2015.

(b) Based on its balance sheet, Tekmart HK did not make a single payment on the Note until sometime between 2023 and 2024—almost ten years after it was required to pay off the Note. Tekmart HK was therefore in default under the Note as of September 1, 2015.

(c) Over that entire time period, Tekmart International never foreclosed on the Note and never proceeded to enforce its feigned security rights over Tekmart HK's assets.

(d) Yet, mere weeks after the Judgment was entered, Tekmart HK suddenly decided to enforce its feigned security rights under the Note by taking ownership of all of Tekmart HK's assets.

47. Fifth, as explained below, Tekmart International did maintain possession of the vast majority of the assets that it acquired under the Transfer and instead gave them to Tekmart Ltd., the reincarnation of Tekmart HK.

(a) Under the Transfer Agreement, Tekmart International took possession of, inter alia, all of Tekmart HK's accounts receivables, facilities, and equipment.

(b) Rather than maintain possession of the close to $8 million in accounts receivables that it had acquired, Tekmart International gave all the accounts receivables to Tekmart Ltd., the reincarnation of Tekmart HK. Tekmart International did not receive any consideration from Tekmart Ltd. for the accounts receivables and did enter into any loan agreements or any other formal documentation with Tekmart Ltd. pertaining to these accounts receivables.

(c) Similarly, rather than maintain possession of the facilities and equipment that it had acquired, Tekmart International allowed Tekmart Ltd., as the reincarnation of Tekmart HK, to use all of the facilities and all of the equipment for its continued business operations. Tekmart International did not receive any consideration from Tekmart Ltd. for its use of the facilities and equipment and did not enter into any lease agreements, loan documents, or any other formal documentation with Tekmart Ltd. pertaining to the facilities and equipment.

48.     Sixth, there was no formal market valuation of Tekmart HK's (a) fixed assets, (b) goodwill, or (c) other tangible and intangible property. Rather, Tekmart International and Tekmart HK simply fabricated a valuation that conveniently made it appear as if all of Tekmart HK's assets collectively had the same exact value as the amount that Tekmart HK purportedly owed to Tekmart International under the Note (although, as stated, the amount that Tekmart HK actually owed under the Note was substantially less than what is stated in the Transfer Agreement).

(a) As further evidence of the parties' failure to initiate any type of good faith valuation, the Transfer Agreement states that the 75% equity interest Tekmart HK owned in a Mexican affiliate (*i.e.*, the entity in Mexico that actually produced the goods

Tekmart HK sold) was worth only $9,000.00 pesos, or the equivalent of around $500.

(b) Moreover, the Transfer Agreement does not allocate any discrete valuation to Tekmart HK's goodwill.

49.   Seventh, as explained below, Tekmart HK and Tekmart International fraudulently doctored Tekmart HK's balance sheet to reflect an alleged increase in the amount owed under the Note so as to justify the transfer of all of Tekmart HK's assets under the Transfer Agreement.

(a) As the time of the October 30, 2024 corporate deposition of Tekmart HK, Tekmart HK's balance sheet reflected that it owed approximately $12.41 million under the Note, inclusive of interest.

(b) At some point after the October 30, 2024 corporate deposition, Tekmart HK prepared a new balance sheet purportedly showing that, as of September 30, 2024—before the October 30, 2024 corporate deposition even took place—the "Note Payable" had increased from $5,002,279.00 to $6,587,279.00, in an amount totaling $14,641,766.10 inclusive of interest.

(c) No loan documents, promissory notes, or security agreements were executed between Tekmart HK and Tekmart International at any time in 2024. Thus, in fact, the principal balance of the Note was never increased at any point in time after its initial execution in September 2013.

(d) Moreover, other than the Note referenced in the Transfer Agreement, there are no other promissory notes or other loans that served as a basis for the Transfer. Thus, there are no other notes or loans that exist which could have served as a basis for the Transfer.

17

(e) Tellingly, Tekmart HK's corporate witness made no mention of this alleged increase in debt at the October 30, 2024 deposition. On the contrary, he testified that the total amount owed under the Note as of the date of his deposition was $12,413,000, inclusive of interest. Outside of the fraudulent after-the-fact increase to the reported balance on the Note, the underlying valuations Tekmart HK's corporate witness provided at the October 30, 2024 deposition were identical to the numbers that otherwise appear on the September 30, 2024 balance sheet.

(f) Accordingly, between the entry of the Judgment and the execution of the Transfer Agreement, the amount Tekmart HK allegedly owed to Tekmart International under the Note was fraudulently increased to add more than $2 million to the total balance, and the balance sheet was fraudulently altered to reflect this sham increase.

(g) Tekmart International and Tekmart HK fraudulently increased the amount owed under the Note and doctored the balance sheet so as to justify the transfer of all of Tekmart HK's assets under the Transfer Agreement. Indeed, had the amount not been fraudulently increased, Tekmart International and Tekmart HK would have had no way to justify the transfer of all of Tekmart HK's assets under the Transfer Agreement as the value of those assets facially exceeded the amount actually owed under the Note.

50.     Eighth, as explained below, Mr. Napal and TIMS HK have misrepresented and obfuscated the intimate corporate relationship between Tekmart International and Tekmart HK in an obvious attempt to evade liability for the October 2024 Agreement and Judgment.

(a) At his December 4, 2025 deposition, Mr. Napal claimed that there is no corporate relationship at all between Tekmart International and Tekmart HK and that the only

18

relationship between the two entities is that of a creditor and debtor. When confronted with documentation showing otherwise, Mr. Napal went so far as to claim that these long-standing documents were mistaken.

(b) Moreover, in a balance sheet prepared after the Judgment was entered, the term "Intercompany" that previously appeared on Tekmart HK's balance sheet in connection with the description of the "Note Payable" was blatantly deleted.

(c) Mr. Napal's attempt to disclaim the close corporate relationship between Tekmart HK and Tekmart International and the after-the-fact revision to Tekmart HK's balance sheet only serve to underscore the fraudulent nature of the conduct in which Tekmart International is engaged.

51.    Pursuant to the above, the Transfer was fraudulent and intended to evade paying Dometic any of the amounts owed to it under the October 2024 Agreement and Judgment.

## COUNT I
## Fraudulent Transfer Under Ohio Uniform Fraudulent Transfer Act (Chapter 1336 et seq.)

52.    Dometic incorporates by reference and repeats the allegations contained in Paragraphs 1-51 above as if fully stated herein.

53.    The Ohio Uniform Fraudulent Transfer Act, R.C. Section 1336.04, deems a transfer fraudulent as to a creditor where a transfer was made by a debtor to the creditor with the actual intent to hinder, delay, or defraud any other creditor of the debtor whose claim arose before the transfer was made.

54.    The Transfer, including the transfer of all of Tekmart HK's assets to Tekmart International, is a transfer from a debtor to a creditor subject to the Ohio Uniform Fraudulent Transfer Act.

55.     The Judgment, which rendered Dometic a secured creditor of Tekmart HK's assets following Dometic's recordings of a judgment lien, was entered mere weeks before the Transfer occurred.

56.     The Transfer was made with the actual intent to hinder, delay, or defraud Dometic based on the allegations herein and as evidenced by each of the following facts:

(a)  The Transfer was made to an insider, as Tekmart International and Tekmart HK are closely related corporate entities that share common directors;

(b)  After the Transfer, Tekmart HK, through Tekmart Ltd., retained possession and control over the property that was transferred to Tekmart International, including as to the accounts receivables, the facilities, and the equipment that were the subject of the Transfer. Tekmart HK was reincarnated as Tekmart Ltd., which is nothing more than the continuation of Tekmart HK, as it is operated and controlled by the same president, uses the same employees, facilities, and equipment, produces the same products, does business with the same customers, and has access to the same accounts receivables owed to Tekmart HK;

(c)  The Transfer was not disclosed to Dometic at the time it agreed to the October 2024 Agreement, at the time the Judgment was entered, or anytime thereafter until Dometic was forced to pursue discovery from Mr. Napal in his personal capacity. Further, the intended Transfer was expressly concealed from Dometic during the October 30, 2024 corporate deposition taken to assess the nature and location of Tekmart HK's assets;

(d)  Before the Transfer was made, Tekmart HK had not only been sued but had agreed to the Judgment against it in the Underlying Action;

20

(e) The Transfer involved all of the assets of Tekmart HK;

(f) The value of the consideration received by Tekmart HK, *i.e.*, the extinction of the debt it owed to Tekmart International under the Note, was not reasonably equivalent to the value of the assets transferred to Tekmart International, as evidenced by multiple factors, including that (1) the debt Tekmart HK owed to Tekmart International under the Note was substantially less than the value of the assets that were transferred to Tekmart International under the Transfer Agreement, (ii) Tekmart International did not have any security rights in the vast majority if not all of the assets it acquired under the Transfer, meaning Tekmart International fraudulently acquired millions in dollars of assets that Dometic had priority over as a judgment creditor, (c) no formal market valuation was performed in connection with Tekmart HK's fixed assets, goodwill, and any other tangible and intangible property belonging to Tekmart HK at the time of the Transfer, and the parties instead fabricated a valuation that conveniently matched the exact amount as the amount allegedly (but not actually) owed under the Note, and (d) the Transfer Agreement blatantly undervalued various assets belonging to Tekmart HK, including as to the purported $500 valuation for Tekmart HK's 75% equity interest in an affiliated Mexico entity and as to the lack of any discrete valuation attributed to Tekmart HK's goodwill;

(g) Tekmart HK became insolvent as a result of the Transfer; and

(h) The Transfer occurred mere weeks after the Judgment was entered.

57.     As a result of the Transfer, Dometic has been damaged and requests all relief afforded under the Ohio Uniform Fraudulent Transfer Act, R.C. Section 1336.07, including, but

not limited to: (a) avoidance of the Transfer made to Tekmart International to the extent necessary to satisfy Dometic's claim against Tekmart HK under the Judgment; (b) an attachment or garnishment against Tekmart International's property and assets; and (c) any other relief that the circumstances may require.

## COUNT II
### Tortious Interference With a Contractual Relationship

58.     Dometic incorporates by reference and repeats the allegations contained in Paragraphs 1-57 above as if fully stated herein.

59.     Tekmart HK entered into a valid and binding contract with Dometic pursuant to the October 14, 2024 Rule 68 Offer of Judgment that it made to Dometic, which Dometic formally accepted in writing on that same date (the "October 2024 Agreement").

60.     In the October 2024 Agreement, Tekmart HK promised to pay Dometic $1,215,643 plus Dometic's reasonable and necessary attorneys' fees and costs incurred through October 14, 2025 in the Underlying Action. In exchange, Dometic agreed to a complete settlement of all claims it had brought against Tekmart HK in the Underling Action.

61.     Dometic complied with its contractual obligations by not pursuing its legal claims against Tekmart HK in the Underlying Action.

62.     Tekmart International, as a close corporate affiliate of Tekmart HK and as the holder of an intercompany Note with Tekmart HK, had full knowledge of the October 2024 Agreement. Moreover, in effectuating the Transfer, Tekmart International was necessarily aware of the liabilities Tekmart HK owed at the time.

63.     Tekmart HK breached the October 2024 Agreement by failing and refusing to pay the amounts due and owing to Dometic under the October 2024 Agreement.

LEGAL\78745193\1

64.     Tekmart International intentionally procured Tekmart HK's breach of the October 2024 Agreement by initiating the Transfer and assuming ownership of all of the assets Tekmart HK could have used to perform on the October 2024 Agreement.

65.     There is no justification for Tekmart International's conduct, which was improper for many reasons, including because:

(a)  The value of the assets that Tekmart International assumed ownership over substantially exceeded the amounts that Tekmart HK owed under the Note;

(b)  Tekmart International did not have a security interest in the vast majority if not all of the assets it assumed ownership over, meaning Tekmart International knowingly and wrongfully took property that Dometic, as a secured judgment creditor, had priority over;

(c)  The only reason Tekmart International initiated the Transfer was to prevent Tekmart HK from being able to fulfill its obligations under the October 2024 Agreement, as evidenced by the fact that Tekmart International never sought to enforce its feigned security rights against Tekmart HK for more than a decade and only proceeded to do so after the October 2024 Agreement was formed. Tekmart International then proceeded to reincarnate Tekmart HK as a new corporate entity, Tekmart Ltd., allowing Tekmart Ltd. to receive all the accounts receivable and use all the facilities and equipment that Tekmart International had acquired as a result of the Transfer.

66.     Dometic has been damaged by Tekmart International's tortious conduct in the amount of the monies still due and owing under the October 2024 Agreement.

LEGAL\78745193\1

**COUNT III (In the Alternative to Count II)**
**Breach of Contract – Successor Liability**

67.     Dometic incorporates by reference and repeats the allegations contained in Paragraphs 1-66 above as if fully stated herein.

68.     Tekmart HK entered into a valid and binding contract with Dometic pursuant to the October 14, 2024 Rule 68 Offer of Judgment that it made to Dometic, which Dometic formally accepted in writing on that same date (the "October 2024 Agreement").

69.     In the October 2024 Agreement, Tekmart HK promised to pay Dometic $1,215,643 plus Dometic's reasonable and necessary attorneys' fees and costs incurred through October 14, 2025 in the Underlying Action. In exchange, Dometic agreed to a complete settlement of all claims it had brought against Tekmart HK in the Underling Action.

70.     Dometic complied with its contractual obligations by not pursuing its legal claims against Tekmart HK in the Underlying Action.

71.     Tekmart HK breached the October 2024 Agreement by failing and refusing to pay the amounts due and owing to Dometic under the October 2024 Agreement.

72.     Dometic has been damaged by Tekmart HK's breach of the October 2024 Agreement in the amount of all unpaid monies due and owing under the October 2024 Agreement.

73.     Tekmart International is liable for Tekmart HK's breach of the October 2024 Agreement as Tekmart HK's successor given that Tekmart International and Tekmart HK entered into the Transfer for the purpose of escaping the liabilities Tekmart HK had incurred under the October 2024 Agreement.

74.     Accordingly, Tekmart International is liable for the breach of the October 2024 Agreement as a successor to Tekmart HK in connection with the liabilities incurred under the October 2024 Agreement.

LEGAL\78745193\1

75.     As a result, Dometic is entitled to recover from Tekmart International the full amounts due and owing under the October 2024 Agreement.

WHEREFORE, Plaintiff Dometic Corporation demands judgment in its favor and against Tekmart International Inc. as follows:

(a)     Judgment based on the facts and claims set forth above;

(b)     Avoidance of the Transfer made to Tekmart International to the extent necessary to satisfy Dometic's claim against Tekmart HK under the Judgment;

(c)     An attachment or garnishment against Tekmart International's property and assets;

(d)     Compensatory and consequential damages against Tekmart International;

(e)     Punitive damages against Tekmart International for its egregious behavior;

(f)     Dometic's attorneys' fees and the costs of this action; and

(g)     Such further relief as this Court deems appropriate in law or equity.


Respectfully submitted,


Marshal M. Pitchford (0071202)
mpitchford@dpylaw.com
DICAUDO, PITCHFORD & YODER, LLC
209 South Main Street, Third Floor
Akron, Ohio 44308
Telephone:  330.762.7477
Facsimile:  330.762.8059

-and-

*/s/ Erica Rutner*
Erica Rutner, FBN 0070510
erutner@cozen.com
COZEN O'CONNOR
501 East Las Olas Blvd., Suite 300
Fort Lauderdale, Florida 33301
Telephone: 561.245.6120
Facsimile: 561.245.6213
*Pro Hac Vice Admission Pending*

*Counsel for Plaintiff Dometic Corporation*

## JURY DEMAND

Plaintiff Dometic Corporation hereby demands a trial by jury on all issues so triable.

_____
Marshal M. Pitchford

LEGAL\78745193\1